864 So.2d 512 (2004)
Dwaine WOODSON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-71.
District Court of Appeal of Florida, Fifth District.
January 9, 2004.
*513 James B. Gibson, Public Defender, and A.S. Rogers, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, C.J.
Dwaine Woodson appeals his conviction and the sentence imposed as a result of the trial court's order revoking his sex offender probation. Woodson contends that the trial court abused its discretion in finding that he willfully and substantially violated his probation by failing to actively participate in the court-ordered sex offender treatment program and by failing to relay the results of his HIV test to the victim. Woodson bases his contention on the following: 1) the order of probation did not specify time parameters for him to successfully complete the treatment program and the HIV testing; 2) the court order did not specify the number of attempts he would have to comply with these requirements; and 3) he expressed a willingness *514 to undertake another attempt at compliance. We affirm.
Woodson was originally charged with lewd and lascivious battery and lewd and lascivious conduct in violation of section 800.04, Florida Statutes. A third count of the information also charged Woodson with contributing to the delinquency of a minor in violation of section 817.04, Florida Statutes. Pursuant to a plea agreement, Woodson entered a plea of nolo contendere to the charge of lewd and lascivious battery in exchange for dismissal of the other two charges and a downward departure sentence of 51 weeks of incarceration followed by three years of supervised sex offender probation, pursuant to section 948.03(5), Florida Statutes.[1] Specifically, Woodson was ordered to comply with the following conditions, which closely parrot the provisions of sections 948.03(5)(a)3. and 948.03(5)(b)4., Florida Statutes (2000):[2]
You will actively participate in and successfully complete a sex offender treatment program with therapists specifically trained to treat sex offenders, at your own expense. If a specially trained therapist is not available within a 50 mile radius of your residence, you will participate in other appropriate therapy.
If there was sexual contact, you will submit, at your own expense, to an HIV test with the results to be released to the victim and/or the victim's parent(s) or guardian(s).
Although Woodson was also charged with violating other conditions of his sex offender probation, we will confine our discussion to Woodson's violation of the two mentioned above because they are sufficient to warrant revocation of his probation and imposition of his subsequent sentence. We will now explain why we have arrived at that conclusion.
The state has the burden of proving by the greater weight of the evidence that the defendant committed a willful and substantial violation of a term of probation. State v. Carter, 835 So.2d 259 (Fla.2002); Thomas v. State, 760 So.2d 1138 (Fla. 5th DCA 2000). The trial court has broad discretion to determine whether there has been a willful and substantial violation and whether the state has met its burden of proof. Carter. Therefore, in reviewing a trial court's order revoking probation, we must apply the abuse of discretion standard of review. Carter; Thomas. "That is, the appellate court must determine whether or not the trial court acted in an arbitrary, fanciful or unreasonable manner in determining that [the] violation was both willful and substantial." Carter, 835 So.2d at 262 (citing Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980)). Application of this standard is premised on the generally accepted notion that the defendant's motive, intent, and attitude are best identified by the trial court when determining whether the violation is both willful and substantial. Carter.
Here, the trial court found that Woodson willfully and substantially failed to actively participate in the sex offender program. We believe that this is a sufficient ground to revoke Woodson's probation. *515 See Arias v. State, 751 So.2d 184, 187 (Fla. 3d DCA 2000) ("We likewise conclude in this case that the trial court did not abuse its discretion in revoking Arias' probation based upon his willful failure to participate in good faith with the MDSO program."), review denied, 767 So.2d 453 (Fla.2000); Edgerton v. State, 703 So.2d 1249, 1250 (Fla. 5th DCA 1998) ("The state argues, however, that Edgerton's discharge from the program was a direct result of his `utter unwillingness' to comply with the requirements of the program despite numerous accommodations made by staff on his behalf. We affirm."). The trial court also found that Woodson willfully and substantially violated the condition that he submit to HIV testing and supply the results of the test to the victim by simply refusing to do so. This too is a sufficient ground to revoke Woodson's probation. Based on our review of the record, we conclude that the trial court did not abuse its discretion in revoking Woodson's probation because the greater weight of the evidence supports this decision.
Woodson argues that his failure to comply is excusable because no time parameters were established by the trial court for compliance; no limits were set for the number of attempts at compliance; and after his first failure at compliance, he expressed a willingness to try again. We reject Woodson's arguments based on our analysis of the provisions of section 948.03(5) and the goals to be accomplished through the imposition of the various conditions of sex offender probation mandated by that statute.
We begin our analysis by noting that the cases cited by Woodson are distinguishable from the instant case because they involve imposition of special conditions of probation not mandated by the Legislature, which are imposed based on the discretion of the trial court.[3] For example, the cases cited by Woodson involve successful completion of a drug rehabilitation,[4] anger management,[5] or mental health program,[6] each of which is a special condition of probation not required to be imposed by the Legislature. Butler v. State, 775 So.2d 320 (Fla. 2d DCA 2000), involved the condition that the defendant obtain his GED, while O'Neal v. State, 801 So.2d 280 (Fla. 4th DCA 2001), and Mitchell v. State, 717 So.2d 609 (Fla. 4th DCA 1998), involved imposition of the batterer's intervention program. In contrast, in a case involving sex offender probation, the trial court must impose certain legislatively mandated conditions; the statute does not allow for judicial discretion. § 948.03(5), Fla. Stat. (2000). Moreover, imposition of these mandatory conditions requires no oral pronouncement at sentencing. Id. This distinction is important because we must look to the provisions of the statute that require imposition of these mandatory sex offender conditions and consider the goals to be achieved in order to determine whether the Legislature intended to make compliance dependent on time parameters or limitations on the number *516 of attempts at compliance established by the trial court.
Probation, with its panoply of conditions, has been described as the representation of "an enlightened approach to the solution of the problem of providing adequate punishment for criminal offenders." State ex rel. Roberts v. Cochran, 140 So.2d 597, 599 (Fla.1962). The focus of this enlightened approach shifted somewhat from punishment of the offender to identification of the causal factors of the offender's deviant behavior and intervention by the state so that the offender could reform his or her conduct and avoid further contact with the criminal justice system. See Grubbs v. State, 373 So.2d 905 (Fla.1979). The evolution of this approach has led the courts to recognize that the primary goals of probation are to impose on the offender conditions that must be complied with so that: 1) the offender will be rehabilitated and more likely to conform his or her behavior to societal standards in the future; 2) society will be protected from further criminal conduct by the offender; and 3) the rights of the crime victim will be protected.
In order to achieve these goals in certain cases involving sex offenders, the Legislature enacted section 948.03(5). Our careful analysis of the provisions of this statute leads us to conclude that the primary goals of probation will be achieved only if the offender is required to undertake immediate compliance with the mandatory conditions. Additionally, we conclude that the Legislature never intended for the trial court to have to expressly define the number of attempts or establish time parameters for compliance.
While the Legislature has clearly indicated that the emphasis of sex offender probation is treatment of the offender,[7] the concomitant goals of rehabilitation and protection of society once the sex offender is released on supervision may only be accomplished if the offender undertakes immediate treatment, as required by section 948.03(5)(a)3. It makes no sense to release the offender into society on a lengthy term of probation only to allow the offender the discretion to undertake treatment several years later toward the end of the probationary period. Releasing a sex offender, untreated, does not alleviate the concern that he or she will reoffend and affords no protection to society. Moreover, a requirement that provides additional chances for treatment in the future before expiration of the probationary period after willful failure to actively participate in and complete a sex offender treatment program, simply because the offender expresses a willingness to comply at a later date, opens the door to mischievous manipulation by the offender and thwarts all of the goals of probation.
The same rationale applies to the requirement that the offender give the results of a mandatory HIV test to the victim pursuant to section 948.03(5)(b)4. The victim is entitled to have the HIV test results as soon as practicable so that he or she may seek testing or treatment. Certainly the Legislature did not intend that the results be given to the victim several years later toward the end of the probationary period. The only way the victim's *517 rights will be protected is to require immediate compliance with this condition. Ordering a time limit for compliance should not be necessary.
Our conclusion that the Legislature intended immediate compliance, without specification of time or number of attempts by the trial court, is strongly supported by an analysis of the other mandatory conditions required under section 948.03(5). For example, this statute requires imposition of a mandatory curfew;[8] prohibition on working for or living within 1,000 feet of a school, day care center, park, playground, or other places where children congregate;[9] prohibition on any contact with the victim;[10] and submission of two specimens of blood to be registered with the DNA blood bank by the Department of Law Enforcement.[11] The victim and society will not be protected by imposition of these conditions unless the defendant is required to comply immediately after being released on probation.
Accordingly, we conclude that if the trial court does not announce time parameters for compliance with sex offender conditions of probation at sentencing, the defendant is not at liberty to pick the time of compliance within the probationary period. Rather, the defendant must undertake compliance with each condition as soon as he or she is placed on probation. Consequently, willful failure to actively participate in or complete sex offender treatment, or provide test results to the victim, does not necessarily preclude revocation simply because the number of attempts at compliance were not specified or because the defendant is willing to undertake another attempt at compliance within the probationary period. If immediate initial attempts are unsuccessful and the defendant expresses a willingness to try again, other chances at compliance are a matter that should be left to the sound discretion of the trial court.
We believe that affording the trial court discretion in determining whether a violation of sex offender probation is willful and substantial, and the penalty to be imposed for a violation, provides the court with flexibility in imposing just punishments for probation violations, comports with legislative intent and fosters the goal of imposing probation as a criminal sanction. Indeed, the contrary result would be irrational in that it would require the court to do little or nothing to enforce the terms of the defendant's sex offender probation, thus diminishing the utility of sex offender probation as a viable alternative to incarceration. Accordingly, Woodson's conviction and sentence are affirmed. We certify that our decision conflicts with Young v. State, 566 So.2d 69 (Fla. 2d DCA 1990), and note possible conflict with Lawson v. State, 845 So.2d 349 (Fla. 2d DCA 2003), and Lynom v. State, 816 So.2d 1218 (Fla. 2d DCA 2002).
AFFIRM.
PLEUS and ORFINGER, JJ., concur.
NOTES
[1] The scoresheet indicates that Woodson scored a minimum of 144.4 months' incarceration in the Department of Corrections and that he had a prior conviction for sexual assault in 1990 in the state of New Jersey. He also had prior convictions for burglary, trafficking in stolen property, and battery.
[2] The record contains an exhibit, signed by Woodson, specifically listing these conditions and all of the sex offender conditions required under section 948.03. This exhibit also contains a signature, apparently affixed by a clerk or other court personnel, indicating that Woodson was "instructed" on these conditions.
[3] See Palma v. State, 830 So.2d 201 (Fla. 5th DCA 2002); O'Neal v. State, 801 So.2d 280 (Fla. 4th DCA 2001); Butler v. State, 775 So.2d 320 (Fla. 2d DCA 2000); Jones v. State, 744 So.2d 537 (Fla. 2d DCA 1999); Gamble v. State, 737 So.2d 1160 (Fla. 1st DCA 1999); Mitchell v. State, 717 So.2d 609 (Fla. 4th DCA 1998); Edgerton v. State, 703 So.2d 1249 (Fla. 5th DCA 1998); Salzano v. State, 664 So.2d 23 (Fla. 2d DCA 1995); Melecio v. State, 662 So.2d 408 (Fla. 1st DCA 1995); Gibbs v. State, 609 So.2d 76 (Fla. 1st DCA 1992).
[4] Palma; Jones; Edgerton; Salzano; Gibbs.
[5] Gamble; Melecio.
[6] Palma.
[7] Section 948.001(7), Florida Statutes (2000), provides, in pertinent part, that the emphasis of sex offender probation is treatment of the sex offender:

"Sex offender probation" or "sex offender community control" means a form of intensive supervision, with or without electronic monitoring, which emphasizes treatment and supervision of a sex offender in accordance with an individualized treatment plan administered by an officer who has a restricted caseload and specialized training.
[8] § 948.03(5)(a)1., Fla. Stat. (2000).
[9] §§ 948.03(5)(a)2. & 6., Fla. Stat. (2000).
[10] § 948.03(5)(a)4., Fla. Stat. (2000)
[11] § 948.03(5)(a)8., Fla. Stat. (2000).