876 So.2d 173 (2004)
Estelle W. COOK, Individually and Lorraine Cook Denina, Sheron Cook Bayard and Kim Cook Leger on Behalf of Estelle W. Cook
v.
JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 2 d/b/a East Jefferson General Hospital.
No. 04-CA-17.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
Rehearing Denied July 20, 2004.
*175 Christopher J. Bruno, New Orleans, LA, for Plaintiff/Appellee.
Thomas P. Anzelmo, Sr., Jacqueline Blankenship, McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, Metairie, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
At issue in this medical malpractice case is whether the trial court erred in finding that the nursing staff breached the applicable standard of care by not creating a "Falls Care Plan" since documentation of this plan could not be found in the patient's record. For the following reasons, we affirm the trial court's judgment concluding the requisite standard of care was breached in this case, but amend the judgment to delete the special damages award for medical expenses that were contractually adjusted by East Jefferson General Hospital pursuant to Medicare.

FACTS AND PROCEDURAL HISTORY
On September 24, 1999, plaintiff, Estelle Cook, was admitted to East Jefferson General Hospital after she fell and broke her left arm at home when trying to get to the bathroom. While in the hospital she fell and broke her right arm while trying to close her room door and go to the bathroom on September 27, 1999. Dr. Stephen Gergatz, her treating physician, had ordered that she be placed on bed rest. She was not supposed to get out of bed for any reason, not even to go to the bathroom. She allegedly called the nurses' station to get assistance but no one responded. She remained in the hospital until November 2, 1999. She received home health assistance until June 2000.
Subsequently, Ms. Cook and her daughters filed a complaint with a medical review panel. In the complaint, they alleged that East Jefferson breached the applicable standards of care by failing to implement a falls care plan for Ms. Cook upon her admission to the hospital, because she was 70 years old and had a history of a prior fall. Plaintiffs further allege that East Jefferson breached the applicable standard of care by failing to properly restrain and supervise her. Specifically, the complaint alleged that either the hospital nursing staff did not devise and implement a preventative fall plan for Ms. Cook or, if implemented, the proposed actions were inappropriate. East Jefferson contended that the plan was implemented, but actual documentation thereof was lost.
In accordance with the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, et seq., the complaint was presented to a medical review panel. The panel was composed of Arnold Alper, M.D., Bruce Samuels, M.D., Mack Holdiness, M.D. and John R. Wellman, attorney and chairman of the panel. In December 2001, the panel issued its opinion. One panelist opined that the evidence did not support the conclusion that East Jefferson failed to meet the applicable standard of care because the documented nursing care appeared appropriate for this patient's history and physical condition. Two panelists opined that the evidence supported the conclusion that East Jefferson failed to comply with the appropriate *176 standard of care, resulting in injuries because standard falls management guidelines were not followed in this case.
In January 2002, the instant petition for damages was filed in district court against Jefferson Parish Hospital Service District No. 2 d/b/a East Jefferson General Hospital, ("East Jefferson"), alleging negligence by the hospital's nursing staff for failing to follow its own standard Falls Management Guidelines/Fall Prevention Protocol and for failing to provide adequate supervision and restraints for this patient who was at high risk for a fall. In May 2003, Ms. Cook died; and her daughters, Lorraine Cook Denina, Sheron Cook Bayard and Kim Cook Leger, were substituted as the plaintiffs in the case.
On July 31, 2003, East Jefferson filed a motion in limine to exclude the testimony of plaintiff's expert, Crystal Keller, R.N., arguing that she was not familiar with the local standard of care because she has not practiced nursing since 1997 and was not familiar with the 1999 changes to the Patients' Bill of Rights concerning the use of restraints in hospitals. Thus, East Jefferson urged, Ms. Keller could not testify as to the applicable nursing standards of care at East Jefferson in September 1999. The trial court allowed the testimony, noting that it would give the testimony due weight and consideration.
The matter proceeded to a bench trial. Ms. Cook's daughters testified that a falls care plan was not discussed with them, nor did they sign such a plan until after their mother fell in the hospital. Additionally, there was no care plan posted in their mother's room. They also testified that they routinely told nurses to keep the bed rails raised on their mother's bed. The deposition of medical review panel member Bruce Samuels, M.D. was introduced. Dr. Samuels concluded that, based on the evidence, a falls care plan had not been implemented.
Dr. Stephen Gergatz, Ms. Cook's treating physician, testified via deposition that Ms. Cook had been his patient for many years and that he had treated her for diabetes, emphysema, an aneurysm of the thoracic aorta, congestive heart failure, arthritis, osteoporosis and a thyroid condition. Her condition caused her to be short of breath and very weak. Thus, when she was admitted to the hospital in September 1999, he ordered strict bed rest and that all four rails on her bed be raised, especially at night. Dr. Gergatz reviewed Ms. Cook's chart and did not see that a fall assessment plan was devised.
Plaintiff's expert, Crystal Keller, testified that a falls care plan was not done when Ms. Cook was admitted, that standard safety measures were not carried out. She opined that East Jefferson's nursing staff deviated from the standard of care by failing to assess Ms. Cook upon admittance to the hospital on September 24, 1999, and by failing to implement a falls care plan for her until after September 27, 1999.
Becky Gaspard, Ms. Cook's nurse at East Jefferson, testified that the hospital uses a computer program called MIDAS to input falls risk assessment information and that, when the assessment is completed, the computer indicates that it has been "done." She stated that this assessment should be completed when the patient is admitted. She reviewed the patient record and did not find that a falls risk assessment was "done" on September 25, 1999 or before September 27, 1999. She indicated that record demonstrated that an assessment was done on September 28, 1999, after Ms. Cook fell. She stated that raising all four rails on a patient's bed is considered too restrictive for the patient and that the hospital's policy was that two bed rails should be raised. She testified *177 that a falls care plan was posted in Ms. Cook's room over her bed and that she completed one.
At the conclusion of trial, the trial court determined that East Jefferson breached the applicable standard of care and awarded $45,000.00 plus medicals to the plaintiffs. East Jefferson filed this appeal.

DISCUSSION
East Jefferson first argues that the trial court committed manifest error in finding it breached the standard of care for failing to produce documentation that a falls care plan was implemented in this case and that it was negligent. Second, East Jefferson argues that the trial court erred in allowing plaintiff's expert, Crystal Keller, to testify as she was not qualified to render an opinion in this case. Finally, East Jefferson argues that the trial court erred in not specifying the amount of recoverable medical expenses.
In an action against a hospital, the general rules of negligence apply. A plaintiff must show a standard of care, a breach of that standard, an injury and a causal relationship between the injury and the breach of that duty. A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and the facts of that case. Boutte v. Jefferson Parish Hosp. Service Dist. No. 1, 01-918 (La.App. 5 Cir. 1/15/02), 807 So.2d 895, writ denied, XXXX-XXXX (La.4/19/02), 813 So.2d 1093.
A hospital is responsible for the negligence of its nurses under the respondeat superior doctrine. In re Triss, 01-1921 (La.App. 4 Cir. 6/5/02), 820 So.2d 1204. The liability imputed upon the hospital must be viewed in light of the nurses' actions. Id. Nurses and other health care providers are subject to the same standard as physicians. It is a nurse's duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of the nursing or health care profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his or her best judgment, in the application of his or her skill to the case. Id. These factual questions which should not be reversed on appeal absent manifest error. Holtzclaw v. Ochsner Clinic, P.C., 02-555 (La.App. 5 Cir. 10/29/02), 831 So.2d 495.
Plaintiffs argue a falls care plan was simply not done in this case while East Jefferson argues the plan was done but somehow became lost. We note that two members of the medical review panel opined that East Jefferson breached the standard of care and that breach resulted in injury to Ms. Cook.
In this case, we are not convinced that defendant did, in fact, devise and implement a falls care plan for Ms. Cook when she was admitted to the hospital on September 24, 1999. Rather, the record reflects that a falls care plan was not done until after Ms. Cook fell and broke her right arm in the hospital on September 27, 1999. The record further demonstrates that on at least four other occasions when admitted to East Jefferson, Ms. Cook's patient records contain the requisite documentation that a falls care plan was done when she was admitted to the hospital. In fact, the MIDAS computer program does not generate an assessment unless it is actually "done."
*178 Nurse Gaspard testified that she did a falls assessment on Ms. Cook but had no explanation why the documentation was not in her patient record. Ms. Keller and Dr. Samuels testified that a falls care plan was not done in this case. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). The only issue on appeal is whether the factfinder's conclusion was reasonable, not whether it was right or wrong. Id. Evaluation of live witnesses on matters of credibility is better determined by the trial court, rather than from a cold record. Credibility and reasonable inferences of fact should not be disturbed where there is evidence of conflicting testimony at trial. In re Abdo, 02-2513 (La.App. 4 Cir. 7/9/03), 852 So.2d 513. We can only conclude that the trial court did not believe Ms. Gaspard's testimony that a falls care plan was done when Ms. Cook was admitted to the hospital. We find no manifest error with such a finding. We further find that the failure to devise and implement a falls care plan constituted a breach in the standard of care in this case which resulted in injury and damages to Ms. Cook.
Regarding Crystal Keller's testimony in this case, we note she has testified in other cases as an expert in nursing. The court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to being tested by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof. Keener v. Mid-Continent Cas., 01-1357 (La.App. 5 Cir. 4/30/02), 817 So.2d 347, writ denied, XXXX-XXXX (La.9/20/02), 825 So.2d 1175. We also point out that the trial court noted that it would give due weight to her testimony. Thus, we find no error in the trial court's ruling allowing her to testify as an expert in this case.
Finally, East Jefferson argues that plaintiff should not be able to recover the portion of medical expenses written off by East Jefferson pursuant to Medicare under the collateral source rule.
The collateral source rule applies to situations where the victim receives compensation for his damages from a source independent of the tortfeasor. Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be diminished, because of benefits received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. Suhor v. Lagasse, 00-1628 (La.App. 4 Cir. 9/13/00), 770 So.2d 422.
The Second Circuit has held that "a plaintiff may not recover as damages that portion of medical expenses `contractually adjusted' or `written-off' by a healthcare provider pursuant to the requirements of the Medicaid program." Terrell v. Nanda, 33-242 (La.App. 2 Cir. 5/10/00), 759 So.2d 1026, 1031. The rationale behind that decision was that a plaintiff should not be compensated for damages which he had not suffered, and thus, "a recipient of free medical care provided at the expense of taxpayers should not be allowed to recover damages from the tortfeasor and pocket the windfall." Id. at 1031. Because the portion of medical expenses that are "written-off" by a healthcare provider are not damages incurred by the injured plaintiff, they are not subject to recovery by application of the "collateral source" rule. Id at 1031.
*179 We note that the issue was presented to, but not determined by, this Court in Kozina v. Zeagler, 94-413 (La.App. 5 Cir. 11/29/94), 646 So.2d 1217, and therefore we do not find the Kozina case applicable to this appeal.
Accordingly, we find that the trial court erred in awarding that portion of medical expenses that were "contractually adjusted" or "written-off" by East Jefferson pursuant to Medicare.
For the above discussed reasons, we amend the judgment of the trial court to delete the special damages award for medical expenses that were "contractually adjusted" or "written-off" by East Jefferson General Hospital pursuant to Medicare. In all other respects the judgment of the trial court is affirmed.
AFFIRMED AS AMENDED.