# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 12-1457


**THE ESTATE OF WILLIE WALTERS**

**VERSUS**

**WEST LOUISIANA HEALTH SERVICES, INC., d/b/a
BEAUREGARD MEMORIAL HOSPITAL**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. 2012-0078
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN E. CONERY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, James T. Genovese, and John E. Conery, Judges.


**REVERSED AND REMANDED.**


**Darrell Keith Hickman**
**Hickman Law Office**
**620 Murphy Street**
**Post Office Box 48**
**Alexandria, Louisiana  71309-0048**
**(318) 448-6353**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **The Estate of Willie Walters**

**René Joseph Pfefferle**
**Jennifer M. Durham**
**Watson, Blanche, Wilson & Posner**
**505 North Boulevard**
**Post Office Box 2995**
**Baton Rouge, Louisiana  70821-2995**
**(225) 387-5511**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **West Louisiana Health Services, Inc., d/b/a**
      **Beauregard Memorial Hospital**

**CONERY, Judge.**

This medical malpractice action was filed on behalf of The Estate of Willie Walters (Estate), by his wife Opal Walters, who was designated as succession administrator only for the purpose of pursuing this action against West Louisiana Health Services, Inc., d/b/a Beauregard Memorial Hospital (Beauregard). The trial court granted Beauregard's motion for summary judgment dismissing Mr. Walters' claim on the basis that the Estate failed to submit an expert medical opinion to support the claim that a breach of the standard of care caused injury to Mr. Walters. For the following reasons, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

On June 15, 2009, Mr. Walters was admitted by Dr. Flynn Taylor, a family practitioner, to Beauregard with complaints of cough, congestion, fever, and breathing difficulties. Dr. Taylor diagnosed Mr. Walters with pneumonia and chronic obstructive pulmonary disease (COPD). The family reported that Mr. Walters had previously fallen at home. Mr. Walters was determined to be ambulatory, but he required some assistance with ambulation and was assessed to be at high risk for falls. Having determined that Mr. Walters was at high risk for falls, the hospital was required to implement a fall prevention procedure, including several fall prevention steps. Beauregard contends that these steps included placing the bedside rails up times three, placing the bed in the low position, placing a commode near the bedside, and putting the nurse call light within Mr. Walters' reach, so that Mr. Walters could call the nurses for assistance. He was allegedly instructed to call the nurses whenever he needed assistance.

On June 20, 2009, a nurse found Mr. Walters on the floor next to his bedside commode. He had suffered a non-displaced fracture of his left hip and was

subsequently transferred to Lake Charles Memorial Hospital by his treating physician, Dr. Taylor, for surgery on his fractured hip.

On or about June 11, 2010, in accordance with La.R.S. 40:1299.47, the Estate filed a complaint of medical malpractice against Beauregard with the Division of Administration. The Estate requested a medical review panel (MRP) and alleged that Beauregard breached the standard of care owed to Mr. Walters by allowing him to fall and fracture his hip. Evidently, Mr. Walters died of unrelated causes prior to the filing of the Estate's complaint with the Division of Administration.[1]

The medical review panel, consisting of three physicians, Drs. Kelvin Spears, Gerald Mouton, and Vincent Lococo, reviewed Mr. Walters' complaint, and on October 12, 2011, the panel issued an opinion, unanimously finding that, based on the evidence presented, Beauregard did not breach the applicable standard of care in its treatment of Mr. Walters.

On January 26, 2012, the Estate timely filed suit, claiming medical malpractice against Beauregard. Beauregard answered the Estate's suit on February 28, 2012, and propounded interrogatories seeking the name of all experts the Estate intended to use at the time of trial.

On June 28, 2012, Beauregard filed a motion for summary judgment on the grounds that the Estate had no expert testimony to support its claim as required by La.R.S. 9:2794(A). In support of its motion for summary judgment, Beauregard relied on the opinion of the medical review panel that the hospital had not breached the standard of care in its treatment of Mr. Walters.

_____

[1] The Estate's Petition for Damages indicates Mr. Walters' death and designates his certificate of death as Exhibit "A." However, the record before us does not contain the referenced death certificate.

2

Beauregard's motion for summary judgment was set for hearing on September 13, 2012. On September 11, 2012, the Estate filed a motion and order for continuance on the grounds that its expert, Mae A. Williams, Associate Chief, Nursing Services for Education, and Acting Chief of Education Service for the Alexandria Veterans Administration Health Care System in Pineville, Louisiana (Nurse Williams), did not have adequate time to review the records from Beauregard in time for the hearing. Beauregard opposed the motion for continuance as untimely, citing the failure of the Estate to have an expert review the case despite three years having passed since the alleged malpractice and eleven months since the medical review panel issued its opinion in favor of Beauregard.

The hearing on Beauregard's motion for summary judgment was held, as scheduled, on September 13, 2012. The trial court denied the Estate's motion for a continuance, but left the record open for seven days to allow Nurse Williams the opportunity to review the records and to allow the Estate to file into the record an affidavit of Nurse Williams in opposition to Beauregard's motion for summary judgment.

On September 20, 2012, the Estate filed its opposition to Beauregard's motion, asserting expert testimony was not required in this case, and, in the alternative, the affidavit of Nurse Williams established that Beauregard breached the applicable standard of care. Beauregard filed a reply brief on September 21, 2012, urging that the affidavit of Nurse Williams did not create a genuine issue of material fact for trial.

On September 26, 2012, in its written Reasons For Judgment and Judgment, the trial court granted Beauregard's motion for summary judgment on the basis

3

that the Estate failed to produce expert medical testimony refuting the opinion of the medical review panel.

## ASSIGNMENTS OF ERROR

1.  The district court erred when it relied upon the defendant'[s] inadequate medical record keeping [and] dismissed the plaintiff's claim on defendant's motion for summary judgment.

2.  The district court erred when it failed to recognize that a medical facility that fails to maintain adequate medical records breaches the standard of care for medical professionals.

In other words, the Estate urges that the trial court erred in relying on inadequate medical records in reaching its ruling and in not recognizing that Beauregard's failure to maintain adequate medical records *is* a breach of the standard of care. Thus, a genuine issue of material fact was created by Nurse Williams' affidavit which questioned the quality and completeness of the nurses' notes pertaining to the care of Mr. Walters while he was a patient at Beauregard. By inference, there is a factual dispute as to whether an appropriate high-fall risk procedure was actually in place and followed.

The Estate alleged in its petition that Mr. Walters did call for assistance several times and fell after trying to get up to go to the bathroom when no one came to assist him. The hospital records that were provided do not contain any record of Mr. Walters' alleged calls, nor do they show that Mr. Walters fell, broke his hip, and was found next to his bed on the floor.

## DISCUSSION

*Summary Judgment Issue*

Summary judgments are reviewed de novo, applying the same standard to the matter as that applied by the trial court. *Smith v. Our Lady of the Lake Hosp.,*

*Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. Summary judgment is favored by law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

In 1997, the legislature enacted La.Code Civ.P. art. 966(C)(2) which clarified the burden of proof in summary judgment proceedings. The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. "[T]he failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Hutchinson v. Knights of Columbus, Council No. 5747,* 03-1533, p. 6 (La. 2/20/04), 866 So.2d 228, 233 (citing *Hardy v. Bowie,* 98-2821, (La. 9/8/99), 744 So.2d 606).

When a motion for summary judgment is made and supported, the adverse party may not rest on the allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967(B). A fact is material when its existence or nonexistence may be essential to a plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Smith,* 639 So.2d at 751 (quoting *South Louisiana Bank v. Williams,* 591 So.2d 375, 377 (La.App. 3 Cir.

5

1991), *writs denied,* 596 So.2d 211 (La.1992)).  In other words, a "material" fact is one that would matter on the trial on the merits. "Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Id.* at 751 (citations omitted).

In determining whether a fact is material, we must consider the substantive law governing the litigation. *Davenport v. Albertson's, Inc.,* 00-685 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, *writ denied*, 01-73 (La. 3/23/01), 788 So.2d 427. Our supreme court in *McGlothlin v. Christus St. Patrick Hospital,* 10-2775, pp. 17-18 (La. 7/1/11),  65 So.3d 1218, 1231-32 stated:

> In a medical malpractice action against a hospital, the plaintiff must prove, as in any negligence action, the defendant owed the plaintiff a duty to protect against this risk, the defendant breached that duty, the plaintiff suffered an injury, and the defendant's actions were a substantial cause in fact of the injury. *Smith v. State through Dept. of Health and Human Resources Admin.*, 523 So.2d 815, 819 (La.1988). "A hospital is bound to exercise the requisite standard of care toward a patient that the particular patient's condition may require and to protect the patient from external circumstances peculiarly within the hospital's control." *Id.*  Whether a hospital has breached those duties depends on the circumstances and facts of the case. *Hunt v. Bogalusa Community Medical Center*, 303 So.2d 745,747 (La.1974).

The *McGlothlin* court additionally stated: "Moreover, the resolution of whether the alleged malpractice constitutes negligence as well as the assessment of factual conflicts, including those involving the contradictory testimony of expert witnesses, falls within the province of the trier of fact." *Id.* at 1232 (citing *Martin v. East Jefferson General Hosp.*, 582 So.2d 1272, 1277-78 (La.1991)).

In addition, our supreme court in *S.J. v. Lafayette Parish School Board.,* 06-2862, p. 5 (La. 6/29/07), 959 So.2d 884, 887, reminds us that: "Even though summary judgment is now favored, it is not a substitute for trial on the merits, and it is inappropriate for judicial determination of subjective facts, such as motive, intent,

6

good faith or knowledge that call for credibility evaluations and the weighing of testimony." The trial court, in deciding a motion for summary judgment, must assume that all of the affiants are credible. *Davis v. Delta Bank,* 42,529 (La.App. 2 Cir. 11/7/07), 988 So.2d 1254.

### *Genuine Issue of Material Fact*

On June 26, 2012, Beauregard filed its original motion for summary judgment, approximately five months after suit was filed on behalf of the Estate. Beauregard claimed the Estate had failed to identify a medical expert as requested in Beauregard's interrogatories which were propounded in conjunction with its February 28, 2012 answer to the Estate's petition. The record does not contain the Estate's response to Beauregard's interrogatories or reflect that any steps were taken by Beauregard to require the Estate's response. In addition, the record does not contain a scheduling order with court-ordered deadlines for the naming and/or the production of expert reports.

In the September 11, 2012 correspondence to the trial court seeking a continuance, counsel for the Estate notes his continuing obligation to update the Estate's answers to interrogatories and, thus, names and attaches the curriculum vitae of Nurse Williams.

The Estate then requested a continuance of the September 13, 2012 hearing in order to allow its retained expert, Nurse Williams, time to review the file and render a report and affidavit on behalf of the Estate. Beauregard opposed the continuance on the basis that the Estate "failed to have this matter reviewed by an expert despite three years having passed since the date of the alleged malpractice, eleven months having passed since the panel rendered an opinion in favor of

Defendant, and over two months having passed since Defendant filed its Motion for Summary Judgment."

The hearing on Beauregard's motion for summary judgment was held, as scheduled, on September 13, 2012. The trial court, in its colloquy with counsel for the Estate, had apparently adopted the position of Beauregard that the Estate should have retained an expert at an earlier date.

THE COURT:

> This matter is set before the Court on a motion for summary judgment, and yesterday the Court received a fax from Mr. Hickman requesting a continuance of this matter based upon the fact that you recently retained the services of [Mae] Williams to review the medical records in this matter. When Ms. Williams was retained, Mr. Hickman?

MR. HICKMAN:

> About three weeks ago, Judge. Ms. Williams, she is the chief associate nurse at the VA Hospital in Pineville in charge of nursing education. I retained her about three weeks ago to review the record. Since that time, she's had a death in the family; and she's also had to go to Florida to teach a class there for a week. So out of that three weeks that she had, she's probably had a possible week to review the records. I'm asking the Court for -- to give me an opportunity to let her review it and render an opinion as to whether or not there is any breach of the standard of care in this case. It may be very possible that she may review it and agree with the medical review panel that there is no breach of the standard of care. I don't know, but I would like to at least have an opportunity to see what she has to say.

THE COURT:

> Did you let her know that you had to have something filed at least eight days prior to this hearing in order for it to be considered by the Court?

MR. HICKMAN:

> Yes, Judge, and she told me she would do the best she could; but she just wasn't able to get it to me.

THE COURT:

Well, quite honestly, this thing has been going on for quite some time. As I understand the pleadings, the primary thrust is that Mr. Walters called for assistance, allegedly, and did not get it and as a result fell and injured himself. As I understand it, there's no notation in the records whatsoever of Mr. Walters making that call for assistance.

MR. HICKMAN:

There's no notation of -- There's no notation of the fall itself, Judge, in the record. The only reference to the fall is actually a notation by Dr. Taylor as he's transferring Mr. Walters from Beauregard Hospital to Lake Charles. He mentioned that he had fell [sic] while in the bathroom.

THE COURT:

My point of that is, if there's nothing in the records that indicates that here was a call for assistance and none was given timely, I don't know how this expert is going to make a determination from reviewing those records. But I don't like to throw people's cases out because their lawyers didn't do timely what they should have done. The hospital is going to suffer no ill consequences for waiting two more weeks to make this decision; because, quite honestly, if there's not expert testimony that there was liability here, then the motion for summary judgment is appropriate.

The trial court then denied the Estate's motion to continue, but granted the Estate seven days, until the close of business on September 20, 2012, to submit an affidavit from its expert witness, Nurse Williams. The Estate complied and filed its opposition as ordered on September 20, 2012, along with an affidavit by Nurse Williams, her curriculum vitae, and a document entitled "Requested Report." Beauregard filed its opposition on September 21, 2012.

The trial court denied the Estate's requested continuance primarily on the basis that there was a three year period from the alleged malpractice, in June of 2009, to the date of the hearing in September of 2012. The Estate filed its claim on June 11, 2010, with the medical review panel. However, a plaintiff in a malpractice

9

action is not required at the medical review panel to "specify the health care providers' standards of care." *Perritt v. Dona*, 02-2601, 02-2603, p. 13 (La. 7/2/03), 849 So.2d 56, 65.

The medical review panel rendered its decision on October 12, 2011. Pursuant to La.R.S. 40:1299.47(N)(1)(a)(ii), the Estate had ninety days from receipt of notification by certified mail to file suit and did so in district court on January 26, 2012.[2] Beauregard's motion for summary judgment was filed on June 28, 2012, some four months after Beauregard filed its answer to the Estate's petition and propounded interrogatories requesting the name of the Estate's medical expert. As previously indicated, there was no scheduling order setting forth dates to hire experts and furnish reports.

In compliance with the order of the trial court, on September 20, 2012, the Estate filed its opposition to Beauregard's motion, asserting expert testimony was not required in this case, based on the doctrine of res ipsa loquitor. The Estate argued in the alternative, the affidavit of Nurse Williams established that Beauregard breached the standard of care. Nurse Williams' report raises a number of questions concerning the adequacy of the nurses' notes at Beauregard and supports the statement in Nurse Williams' affidavit that, "The documentation of treatment and nurse's progress notes are inadequate and fail to meet the standard of care of nurses in the State of Louisiana."

In its reasons, the trial court found that Nurse Williams' affidavit did "not refute the conclusions reached by the medical review panel, nor does it contain

_____

[2] Although the medical review panel decision was technically issued on October 12, 2011, it was not signed by the attorney chairman until October 25, 2011. The record does not reflect the date the panel opinion was sent or received. However, considering the date of signing by the attorney chairman, allowing a few days for mailing, and considering the date the petition was filed, January 26, 2012, it would appear the suit was timely filed. This assumption is bolstered by the fact that Defendant has not raised the issue of timeliness on appeal.

factual assertions in support of the plaintiff's claims." The trial court further stated:

> Instead, Nurse Williams attests that the documentation of treatment that she viewed was so inadequate that she could not determine if the standard of care was breached. Nurse Williams never opines that a breach of the standard of care caused injury to the plaintiff. This affidavit is insufficient to establish that the plaintiff will be able to satisfy her evidentiary burden at trial. As such, there is no genuine issue of material fact, and the defendant is entitled to judgment as a matter of law.

On the contrary, a review of the record reveals that the affidavit of Nurse Williams does opine that the standard of care was breached by Beauregard. Her affidavit states, "The documentation of treatment and nurse's progress notes are inadequate and fail to meet the standard of care of nurses in the State of Louisiana." This statement is further supported by her finding that, "it was noted during this admission to Beauregard Memorial Hospital that Mr. Walters had fallen at home. Given diagnosis and his history of falling, there should have been some documentation of the risk of falling for Mr. Walters." Nurse Williams then details additional procedures that should have been implemented by the nurses and detailed in the records of Beauregard based on the information provided upon Mr. Walters' admission to the hospital. Nurse Williams in her affidavit states:

> Once a fall risk analysis was done, Mr. Walters's [sic] chart, bed and Care Plans should have been tagged with the Fall Risk precautions that were being undertaken to prevent Mr. Walters from falling and injuring himself. This information should have been reported in the Hand off Communications between shifts. There should have been Fall Protocols and Interventions in place. I could not tell if any of this was done because the medical records are so inadequate and does not include documentation that such action and precautions were undertaken.

In *Cook v. Jefferson Parish Hospital Service District No.2,* 04-17 (La.App. 5 Cir. 5/26/04), 876 So.2d 173, *remanded on other grounds*, 04-2134 (La. 12/8/04),

11

888 So.2d 819, a woman fell at home and broke her left arm when trying to get to the bathroom. After she was admitted to East Jefferson General Hospital (East Jefferson), she fell again and broke her right arm while trying to close the door to the bathroom. Her daughters filed a medical malpractice claim against the hospital, alleging the staff should have implemented a "Falls Care Plan" because she was 70 years old and had a history of a prior fall.

The fifth circuit affirmed the trial court's ruling in favor of the daughters, finding the East Jefferson nursing staff breached the standard of care "by not creating a 'Falls Care Plan' since *documentation of this plan could not be found in the patient's record*." *Id.* at 175 (emphasis added).

The affidavit of Nurse Williams references the "Falls Risk" precautions that should have been implemented for Mr. Walters. The medical review panel opinion indicates that Mr. Walters "was determined to be ambulatory, but required some assistance with ambulation, and was assessed to be at high risk for falls." Although the panel opinion references a "fall assessment," which lists several fall prevention steps required for Mr. Walters, without further clarification, there can be no determination that the "fall assessment" discussed by the panel was actually in place or implemented, or whether any plan was equivalent to the "Falls Risk" precautions outlined by Nurse Williams as the standard of care. In fact the Beauregard medical records are not in evidence at all.

Moreover, when he was admitted to the hospital, the notice to Beauregard that Mr. Walters had previously fallen at home mirrors the facts of *Cook.* The opinion of the medical review panel, upon which Beauregard relies to support its motion, does not include the information that Beauregard was on notice that he had suffered a fall at home. Thus, this fact, combined with the standard of care which

12

Nurse Williams attests is required for a patient in this condition, create genuine issues of material facts precluding summary judgment.

In addition, the trial court, in its reasons for granting summary judgment, relies heavily on Beauregard's staff progress notes. There is no indication in the nurses' progress notes that Mr. Walters rang for assistance prior to leaving his bed and suffering the fall which fractured his hip.

The statement of the Estate's counsel on the record and Nurse William's report, however, reflect that Mr. Walters' fall on September 20, 2009, was not documented at all in the Beauregard nurses' notes. According to counsel for the Estate, no mention of the fall was made in the records until Dr. Taylor transferred Mr. Walters, on September 22, 2012, to Lake Charles Memorial Hospital for surgery to repair the hip fracture. Given this glaring omission, this court is reluctant to rely on Beauregard's claim that *the absence* of a documented call for assistance in the medical records leads to the conclusion that no such call was made. The medical review panel's "finding" that Mr. Walters did not ring for assistance cannot be supported by a record which does not even contain the undisputed fact that the patient did fall and fracture his hip.

At best, the trial court's ruling granting Beauregard's motion for summary judgment is premature at this stage of the litigation. Discovery appears to be in its infancy and inadequate. The Estate has named a medical expert who has raised genuine issues of fact which at least require further inquiry in order to determine if the alleged breach of the standard of care by Beauregard bears a causal link to Mr. Walters' injuries. *Borne v. St. Francis Medical Center*, 26,940 (La.App. 2 Cir. 5/10/95), 655 So.2d 597, *writ denied*, 95-1403 (La. 9/15/95), 660 So.2d 453. *See also Cook,* 876 So.2d 173.

Considering the Estate's retention of Nurse Williams as its medical expert, and in light of this court's ruling, the Estate's argument about the case proceeding without a medical expert on the basis of res ipsa loquitor need not be addressed by this court at this time.

## DISPOSITION

The judgment of the trial court granting the motion for summary judgment on behalf of West Louisiana Health Services Inc., d/b/a Beauregard Memorial Hospital and dismissing the claims of The Estate of Willie Walters is reversed. This matter is remanded to the trial court for further proceedings. All costs are assessed against West Louisiana Health Services Inc., d/b/a Beauregard Memorial Hospital.

**REVERSED AND REMANDED.**